RECEIVED
IN ALEXANDRIA, LA.

APR - 1 2014

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, ET AL | : | DOCKET NO. 13-3228 |
| VS. | : | JUDGE TRIMBLE |
| FIRST HEALTH GROUP CORP., ET AL | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING AND ORDER

Before the court is "Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and Motion to Transfer Venue Under 28 U.S.C. § 1404(a)" (R. #17) wherein defendants, First Health Group Corp., Coventry Health Care Workers' Compensation, Inc., and Aetna Health Holdings, LLC (collectively referred to as "Coventry")[1] move to dismiss plaintiff's implied indemnity claims, and/or to transfer the instant case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).

## FACTUAL ALLEGATIONS

Liberty Mutual[2] filed the instant action seeking attorney fees and costs that it incurred defending the putative class action styled <u>Roche v. Liberty Mutual Managed Care, Inc.</u>, Civil Action 07-cv-00331 filed in the United States District Court for the Southern District of Illinois. On March 13, 2009, <u>Roche</u> voluntarily dismissed the action. In the instant suit, Liberty Mutual asserts that the

---

[1] Coventry Health Care, Inc. and all of its subsidiaries were acquired by Aetna, Inc. in May 2013. Coventry Health Care, Inc. was merged into Aetna Health Holdings, L.L.C. as of January 1, 2014. At that time, wholly-owned subsidiaries of Coventry Health Care, Inc. including first Health Group Corp. and Coventry Health Care workers' Compensation, Inc. became wholly owned subsidiaries of Aetna Health Holdings, L.L.C.

[2] Comprised of Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, and Liberty Mutual Managed Care, LLC.

claims made against it in <u>Roche</u> involved alleged breaches of Coventry's contracts with Liberty Mutual for which indemnity is owed, and alternatively that Coventry owes implied indemnity for causing Liberty Mutual's loss.

Liberty Mutual provides workers compensation insurance to policyholders in Louisiana, Illinois and other states. Coventry develops and provides nationwide medical provider networks ("PPO Network"). Generally, the medical providers and Coventry enter into a contract wherein the medical provider agrees to provide medical services at a negotiated, but discounted rate in exchange for Coventry "steering" patients through their employers' insurers to the medical providers (the "PPO Contract").

Liberty Mutual and Coventry entered into agreements wherein Coventry provided Liberty Mutual, their policyholders and their employees, access to Coventry's network of medical providers (the "Agreement"). The agreements allowed Liberty Mutual's policyholders to pay for medical services to medical providers of the policyholders' employees at negotiated rates discounted below the normal rates. In other words, Liberty Mutual, who had no contract of their own with the medical providers, accessed Coventry's PPO network, and made payments in accordance with Coventry and the medical providers' PPO agreement. Plaintiff Roche alleged that Liberty reduced payments to Coventry "preferred" providers by taking PPO discounts without authorization or justification to do so.[3] Roche alleged that Liberty Mutual had entered into contracts with Coventry to use its automated managed care system to re-price medical expense claims submitted by Liberty's covered claimants.

Coventry operates PPOs and represents to providers through a preferred provider network contract that Coventry will contract with payors to utilize the services of those providers within the

---

[3] R. #17-4, ¶ 2.

network by directing/steering covered beneficiaries of the payor.[4] In exchange for utilizing the network providers, those providers agree to be paid below their normal and usual fee,– referred to as a "PPO discount".[5] Coventry then offers payors (those obligated to pay the medical expenses such as insurers) through a "Payor Agreement" the opportunity to reduce their medical expenses through the use of medical providers who have entered into a Provider Agreement.[6]

In the underlying lawsuit, Roche alleged that Liberty Mutual operated as a "Silent PPO"[7] and took PPO discounts on plaintiff's and class member's bills. Roche alleged that Liberty Mutual gained access to Coventry PPO discounts through plaintiff's and the Class's Tax Identification Number and improperly applied the PPO discounts to plaintiff's and each Class member's medical bill claims.[8]

Roche complained that Liberty Mutual did not cause its covered beneficiaries to use the services of plaintiff or the class through financial incentives, steerage, or by any means, and that

---

[4] Id., ¶ 10.

[5] Id.

[6] Id.

[7] Roche's complaint explains that "a "Silent PPO" occurs when an insurance company discounts the amount it pays to medical providers within the PPO network without causing the utilization of those providers within the PPO network by their covered claimants for whose medical bills the discount is taken. The scheme is "silent" to the preferred providers because after medical services are provided to the patient and the bill for those services sent to the insurance company responsible for paying that obligation, payors, like Liberty, take what appears to be an otherwise legitimate PPO network discount and send an explanation of reimbursement form ("EOR") to the provider, stating that a PPO discount applies when in fact that payor did not cause the patient to use the services of the provider, never established a PPO program for its insureds, did nothing to direct the treated patient to use the provider, and had no contract with the healthcare providers to reduce their payment." Id. ¶ 12.

[8] Id. ¶ 21.

Liberty Mutual did not establish preferred providers or exclusive provider programs for its covered claimants, and did not create any Panel of Physicians that included Plaintiff or the Class to provide medical treatment for injured workers covered by insurance plans issued by Liberty Mutual or its affiliates. Furthermore, Liberty Mutual did not make any determination of whether the covered claimant was referred, directed, steered, or in any way caused to utilize the services of network providers as a condition of applying the PPO discount.[9] Roche's putative class action suit asserted that Liberty Mutual's actions in taking the PPO discount were illegal by implementing a silent PPO in violation of Illinois law and/or without a contractual right to do so.

## LAW AND ANALYSIS

In this action, Liberty Mutual seeks indemnification from Coventry for attorney fees and costs it incurred defending the putative class action that was filed in Illinois and later voluntarily dismissed on March 13, 2009. Liberty Mutual seeks to recover attorney fees from Coventry based on (1) breach of contractual indemnity; (2) implied, equitable or legal indemnity; and (3) breach of contract.

Complaining that Liberty Mutual is forum shopping, Coventry has filed the instant motion to dismiss plaintiffs' claims for implied, equitable and legal indemnity and/or to transfer the instant suit to the Federal District Court of either Southern or Northern Illinois. Coventry maintains that the instant indemnity action should be transferred to Illinois due to access of proof, the convenience of the witnesses and in the interest of justice. Liberty Mutual maintains that their choice of forum should be respected because these parties have litigated in this court indemnity issues with respect to Louisiana PPO litigation and First Health (in this litigation, Coventry is a First Health company).

---

[9] Id., ¶ 23.

Thus, Liberty Mutual maintains that by filing the instant action in this court, it is conserving scarce judicial resources and preventing the risk of inconsistent rulings by multiple courts and preventing the resources and attention of the parties from being divided amongst multiple suits in multiple fora that involve the same issues.

A decision to transfer a case pursuant to 28 U.S.C. § 1404(a)[10] is within the trial court's discretion.[11] A defendant moving for a venue transfer under section 1404(a) must show good cause for the transfer.[12] The moving party bears the burden of proving that a change of venue is warranted[13] by first demonstrating that the action could have been brought in the destination venue and also clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice.[14]

Coventry maintains that this case might have been brought in either the Northern or Southern District of Illinois.[15] Coventry submits the affidavit of Arthur J. Lynch which reflects that First

---

[10] § 1404(a) reads as follows:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

[11] Jarvis Christian College v. Exxon Corp., 845 F.2d 523, 528 (5th Cir. 1988); Bearden v. United States, 320 F.2d 99 (5th Cir. 1963), cert. denied, 376 U.S. 922 (1964).

[12] Id.

[13] In re Volkswagen of America, Inc., 545 F.3d 304 (5th Cir. 2008).

[14] Id.

[15] In their reply brief, Coventry seeks to transfer the case to either the Southern or Northern District of Illinois; Coventry initially sought to transfer the case to the Northern Distict of Illinois.

Health's main office is located in Downers Grove, Illinois, within the Northern District of Illinois.[16] Liberty Mutual has offices located throughout the United States and is amenable to suit in the Northern District of Illinois. Liberty Mutual does not dispute that the case might have been brought in Illinois. Thus, this suit could have been properly filed in the Northern District of Illinois.

The Fifth Circuit has adopted private and public interest factors to determine if a defendant has met its burden. The private interest factors are as follows:

(1) the relative ease of access to sources of proof;
(2) the availability of compulsory process to secure the attendance of witnesses;
(3) the cost of attendance for willing witnesses;
(4) all other practical problems that make trial of a case easy, expeditious and inexpensive.[17]

*Relative ease of access to sources of proof*

This factor examines the location of documents and physical evidence.[18] The Lynch affidavit declares that the pertinent books relevant to the negotiations concerning the Liberty Mutual payor contracts and the putative class members' participating provider agreements, and the records and books for Coventry/First Health are located at First Health's offices in Downers Grove, Illinois. Coventry suggests that Liberty Mutual's records are likely to be stored in Boston, Massachusetts, but not in Louisiana. As to the medical records/bills that involve the Roche litigation, these are located at the putative class members' offices, all of which are located within the State of Illinios. The court finds that this factor favors the case being tried in Illinois.

---

[16] Defendant's Exhibit 7, affidavit of Arthur J. Lynch.

[17] In re Volkswagen, 545 F.3d at 315.

[18] Id.

*Availability of compulsory process to secure attendance of witnesses*

Coventry asserts that is it unaware of any witnesses that reside within 100 miles of this court and that some employees who are employed with Coventry/First Health are subject to process in the Northern District of Illinois. As to the actual adjusters who worked on the underlying medical bill claims in the Roche litigation, they are more likely to be subject to subpoena in the Northern District of Illinois.

Liberty Mutual contends that this court has already reviewed and interpreted under Illinois law one of the indemnification contracts that obligates Coventry to indemnify the Liberty Entities without any resort to extrinsic evidence.[19] Liberty Mutual complains that Coventry has failed to provide any lists of witnesses and which witnesses are third-parties for whom compulsory process would be needed. Thus, Liberty Mutual maintains that Coventry has failed to establish good cause to transfer the matter to Illinois. Coventry reminds the court that Louisiana has absolutely no connection with the underlying putative Roche class action. We find that this factor militates in favor of transfer.

*Cost for willing witnesses to attend in Illinois is substantially less*

Coventry remarks that no potential witnesses reside in the Western District of Louisiana and that both parties' witnesses will be required to travel in the event the case stays in this district. Coventry cites In re: VolkswagenAG, [20] wherein the court held that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles,

---

[19] Referring to Liberty Mutual Ins. Co. v. Gunderson, Civ. Action No. 2:04-2405 (W.D. La.)

[20] 371 F.3d at 201, 204-205 (5th Cir. 2004).

the factor of the convenience to witnesses increases in direct relationship to the additional distance to be traveled." Coventry relies on the Lynch affidavit which declares that all of Coventry's witnesses involved in the subject transactions reside within the Northern District of Illinois.

Liberty Mutual argues that even if there were some Illinois witnesses required to travel to Louisiana, this fact does not warrant depriving the Liberty Entities of their choice of forum. The court finds that this factor favors transfer to Illinois.

*Other practical problems that make trial of a case easy, expeditious and inexpensive*

Coventry notes that the expense of trying this case in Louisiana would be in favor of transfer. Liberty does not specifically address this factor. The court can only assume that it would be more expensive to try this case in Louisiana as opposed to Illinois. Therefore, this factor favors transfer. The public interest factors are as follows:

(1) the administrative difficulties flowing from court congestion;
(2) the local interest in having localized interests decided at home;
(3) the familiarity of the forum with the law that will govern the case; and
(4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.[21]

*Administrative difficulties flowing from court congestion, conflict of laws and other practical problems*

As noted by Coventry, there is no perceived difficulty flowing from court congestion, nor are there issues regarding conflict of law. Therefore, these factors are neutral.

*Local interest*

Coventry maintains that Louisiana has no connection with the factual particulars of this case and the payor contracts and participating provider agreements that will determine the parties'

---

[21] Id.

8

responsibilities were negotiated, in substantial part in the Northern District of Illinois. Coventry remarks that the payor and participating provider agreements are Illinois contracts, and the parties to those contracts maintain a significant presence in the Northern District of Illinois. Thus, Coventry argues that the Northern District of Illinois possesses a greater local interest than does this Court in ensuring that Illinois contract rights are protected and enforced. Liberty Mutual complains that Coventry fails to provide any evidence regarding why extrinsic evidence of negotiations will assist in resolving questions regarding the indemnification contracts. The court finds that there is clearly no doubt that Illinois has a significant interest in this litigation, whereas Louisiana has no interest at all in the Roche litigation.

*Familiarity with Illinois law*

Coventry maintains that the Illinois court will be more familiar with Illinois law and the unique features that are implicated in this case. As noted by Coventry, Liberty Mutual maintains that the instant indemnity action mirrors the Gunderson action. Although the instant suit involves an indemnity action between a PPO network provider and a payor, the basis of the underlying suit in Roche is very different from the Gunderson suit. In Gunderson, the basis of the underlying suit involved both the state PPO law and its notice provisions[22] and discounting provider services below the Fee Schedule under the Louisiana Workers Compensation Law. The basis for the Roche class action suit involves allegations that Liberty Mutual violated Illinois law by failing to provide steerage implicating Liberty Mutual's relationships with its various clients and their employees. Clearly, this factor favors transfer to Illinois.

---

[22] La. R.s. 40:2201, et seq.

9

## CONCLUSION AND ORDER

The court finds that the Northern District of Illinois is clearly more convenient than the Western District of Louisiana, and that Coventry has shown good cause to support their motion to transfer the instant action to that district. Furthermore, considering our resolution of the motion to transfer, we will not address Coventry's motion to dismiss at this juncture. Accordingly,

**IT IS ORDERED** that the motion to transfer is hereby **GRANTED** and the instant suit is hereby **TRANSFERRED** to the United States District Court for the Northern District of Illinois.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 1st day of April, 2014.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE